# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No.  20-180-M
)
red L8STAR cellular phone )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A - Property to be Searched

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B - Property to be Seized

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1791(a)(2) | providing or possessing contraband in prison |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Andrew M. Allaire, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   February 7, 2020

*Judge's signature*

City and state: Philadelphia, PA       Hon. Marilyn Heffley, U.S. Magistrate Judge
*Printed name and title*

20-180-M

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Andrew M. Allaire, being first duly sworn under oath and deposed, state the following:

### INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the Philadelphia, Pennsylvania Division. I have been employed with the FBI since May 14, 2017. I am currently assigned to the Violent Crimes Task Force (VCTF) and have been since October, 2017. My current duties include, among other things, the investigation of bank robberies, fugitives, kidnappings, and Hobbs Act robberies. Prior to my duties as a Special Agent with the FBI, I was a sworn police officer in the City of Biddeford in the State of Maine from July 2011 until April 2017.

2. This investigation determined that SHAQUAN JOHNSON (inmate number 69909-066) has committed violation of 18 U.S.C. § 1791(a)(2)(providing or possessing contraband in prison). This affidavit is being submitted in support of an application for a search warrant for the following (referred to hereinafter as the "Subject Telephone"). The item to be seized pursuant to the search warrant is more fully described in Attachment B to the respective warrant:

   a. A red L8STAR cell phone, approximately 2.5 inches in length, 1 inch in width, currently located at the FBI Philadelphia Division, assigned evidence number 1B2.

3. This affidavit is based upon my knowledge, training and experience, as well as the experience of other law enforcement personnel with whom I have spoken and consulted. Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have

1

not included all information known by me or other agents concerning this investigation. I have set fourth only those facts I believe are essential to establish necessary foundation for a search warrant. This affidavit does not exhaust my knowledge or that of other agents of the facts and circumstances surrounding this investigation.

## PROBABLE CAUSE

4. On Friday, January 31, 2020, at approximately 10:00 am, at the Federal Detention Center (FDC), 700 Arch Street, Philadelphia, Pennsylvania, SHAMIR JOHNSON (SHAMIR) and SHAKIRA JOHNSON (SHAKIRA) signed in to visit their brother, SHAQUAN JOHNSON (SHAQUAN).

5. Complying with the Federal Bureau of Prisons' (BOP) requirement to visit SHAQUAN at the FDC, SHAMIR and SHAKIRA completed and signed Notification to Visitor Forms, attesting to the truth of their answers and acknowledging that a false statement on the form is a violation of Title 18, United States Code, Section 1001 (false statement). SHAMIR and SHAKIRA both checked "NO" to the questions as to whether either of them, or any children under 16 years of age in their party, possessed narcotics and telephones, which are explicitly listed as prohibited items on the from.

6. SHAMIR and SHAKIRA brought two infant children with them to visit SHAQUAN in the visiting area. Members of the FDC Special Investigative Services monitored the visit and recorded it with surveillance equipment.

7. During the visit SHAMIR sat next to SHAKIRA and directly across a table from SHAQUAN. SHAMIR had one of the young children sitting on his lap. SHAMIR reached into his pants pocket and removed an unknown item. SHAMIR immediately moved the same hand into the coat pocket of the child sitting on his lap and placed the unknown item inside the child's

2

jacket pocket. At the same time, SHAQUAN was observed to be unbuttoning the front portion of the groin area on his jumpsuit. SHAMIR then handed the child to SHAQUAN.

8. SHAQUAN reached into the child's jacket pocket and appeared to retrieve the item. SHAQUAN then put his hand into the opening in the groin area of his jumpsuit for approximately one minute. It appeared to FDC officers that SHAQUAN concealed the unknown item inside his jumpsuit.

9. FDC staff approached SHAQUAN and escorted him to a private room to conduct a search. Officers had to control SHAQUAN when he became uncooperative. During this time, a small red cell phone, the Subject Telephone, fell from SHAQUAN'S jumpsuit onto the floor. FDC staff secured the Subject Telephone. Officers continued their search of SHAQUAN and located a pouch sewn inside of SHAQUAN'S underwear that contained 49 orange strips marked with "N8," which the FDC's pharmacist identified as Suboxone[1].

10. I know from my experience in investigating crimes committed by inmates at the FDC that Suboxone strips are a valuable commodity illegally sold by inmates for a for up to $100 and/or traded for other benefits in the jail such as commissary items and phone minutes.

## CONCLUSION

11. The Subject Telephone is a wireless telephone. Based on my training and experience, as well as the training and experience of other agents, a wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which

---

[1] I submitted the suspected Suboxone strips to a laboratory for chemical analysis. I expect to receive the laboratory results in four to six weeks.

3

records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing email, voice messages and text messages; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the internet. Wireless telephones may also include global positioning system (GPS) technology for determining the location of the device and for mapping and navigation features. Based on my training and experience, I am aware that people who engage in illegal activities such as robberies have been known to use some or all of these features in the furtherance of their illegal activities.

12. Furthermore, based on my training and experience, I know that electronic devices such as cell phones can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensic tools. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

13. This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

4

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

14. Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, and consistent with Federal Rule of Criminal Procedure 41(e)(2)(B), the warrant I am applying for would permit the examination of the device using whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

_____
Andrew M. Allaire
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me
this _7th_ day of February 2020.

_____
HONORABLE MARILYN HEFFLEY
*United States Magistrate Judge*

6

## ATTACHMENT A
## ITEMS TO BE SEARCHED

A red L8STAR cell phone, approximately 2.5 inches in length, 1 inch in width, currently located at the FBI Philadelphia Division, assigned evidence number 1B2.

## ATTACHMENT B
## ITEMS TO BE SEIZED

1. All records that relate to violations of 18 U.S.C. § 1791(a)(2)(providing or possessing contraband in prison), including:

   a. Documents in electronic form, including correspondence, records, opened or unopened emails, text messages, voicemail messages, call logs, chat logs, internet history.

2. Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including, but not limited to the following:

   a. Forms of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

   b. Data that has been manually programmed into a GPS navigation system, as well as data automatically stored by the GPS navigation system, including any and all electronic data which can be collected, analyzed, created, displayed, converted, stored, concealed, or transmitted, or similar computer impulses or data.

   c. Stored electronic information and communications, including but not limited to, telephone or address directory entries consisting of names, addresses and telephone numbers; logs of telephone numbers dialed, telephone numbers of missed calls, and telephone numbers of incoming calls; schedule entries;

8

stored memoranda; stored text messages; stored photographs; store audio; and stored video.

3. Evidence and contents of logs and files on the device, such as those generated by the device's operating system, which describes the history and use of the device, including but not limited to files indicating when files were written, were opened, were saved, or were deleted. Evidence tending to show the identity of the person using the device at the time any actions relating to the above offenses were taken.